# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-cv-61677

GIANNI VERSACE S.R.L., and
J. CHOO LIMITED,

        Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Gianni Versace S.r.l. ("Versace") and J. Choo Limited ("Jimmy Choo") (collectively "Plaintiffs")[1] hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' trademarks within this district through various Internet based e-commerce stores operating via marketplace websites, image hosting and social media websites, and fully interactive commercial Internet websites operating under the seller identities and domain names set forth on Schedule "A" hereto (the "Seller IDs and Subject Domain Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement

---

[1] The Plaintiffs, Versace and Jimmy Choo, are related ultimate subsidiaries of Capri Holdings Limited, which is a global leader in luxury lifestyle apparel, footwear and accessories.

pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least the Internet based e-commerce stores[2] and the fully interactive commercial Internet websites accessible in Florida operating under their Seller IDs and the Subject Domain Names. Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

---

[2] Some Defendants use their Seller IDs or Subject Domain Name in tandem with electronic communication via private messaging applications or services to complete their offer and sale of counterfeit products bearing the Plaintiffs' registered trademarks. Specifically, consumers can browse listings of the Plaintiffs' branded products online via the Defendants' Seller IDs and are then ultimately directed to send inquiries, exchange data, and complete purchases via electronic communication with those Defendants. These Defendants operate via websites, third-party social media or image hosting websites in tandem with the above-described electronic communication to create an interconnected ecosystem which functions as an online marketplace operation and e-commerce store.

## THE PLAINTIFFS

4.      Capri Holdings Limited is a publicly held company incorporated in the British Virgin Islands with its principal place of business located at 33 Kingsway, London, WC2B 6TP, UK. Capri Holdings Limited is the parent company of Plaintiffs Gianni Versace S.r.l. and J.Choo Limited.

5.      Gianni Versace S.r.l. is an Italian Corporation with its principal place of business located at Via Manzoni Nr. 38, 20121, Milan, Italy. Versace operates boutiques throughout the world, including within this district. Versace is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, as discussed in Paragraph 17 below, and identified in Schedule "B" hereto. Versace offers for sale and sells its trademarked goods within this district. Defendants, through the offers for sale and sale of counterfeit and infringing Versace branded products, are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and causing Versace harm and damages within this jurisdiction.

6.      J. Choo Limited is a United Kingdom Private Limited Company with its principal place of business located at 10 Howick Place London SW1P 1GW, UK. Jimmy Choo operates boutiques throughout the world, including within this district. Jimmy Choo is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, as discussed in Paragraph 26 below, and identified in Schedule "C" hereto. Jimmy Choo offers for sale and sells its trademarked goods within this district. Defendants, through the offers for sale and sale of counterfeit and infringing Jimmy Choo

branded products, are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and causing Jimmy Choo harm within this jurisdiction.

7.      Like many other famous trademark owners in the luxury goods market, Plaintiffs suffer ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores and websites. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the Plaintiffs' respective names and associated trademarks and the destruction of the legitimate market sector in which they operate.

8.      In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts.  The exponential growth of counterfeiting over the Internet has created an environment that requires companies, such as Plaintiffs, to expend significant time and money across a wide spectrum of efforts, in order to protect both consumers and themselves from the ill effects of confusion and the erosion of the goodwill connected to the Plaintiffs' respective brands.

## **THE DEFENDANTS**

9.      Defendants are individuals, business entities of unknown makeup, or unincorporated associations, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those

locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants purposefully target their business activities toward consumers throughout the United States, including within this district, through the operation of commercial Internet based e-commerce stores via Internet marketplace websites under the Seller IDs and commercial Internet websites under the Subject Domain Names.

10.     Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses. Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit branded products as alleged herein, often times as partners, co-conspirators, and/or suppliers.

11.     Defendants are the past and present controlling forces behind the sale of products using counterfeits and infringements of Plaintiffs' respective trademarks as described herein.

12.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods using counterfeits and infringements of one or more of Plaintiffs' respective trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and Subject Domain Names, as well as additional names, e-commerce stores, seller identification aliases, domain names, or websites not yet known to Plaintiffs. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

13.     Defendants have registered, established or purchased, and maintained their Seller IDs and Subject Domain Names.  Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs and Subject Domain Names by providing false and/or

misleading information to the Internet based e-commerce platforms or domain registrars where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller ID and Subject Domain Name. Many Defendants have registered and maintained some of the Seller IDs or Subject Domain Names for the purpose of engaging in illegal counterfeiting and/or infringing activities.

14.     Defendants will likely continue to register or acquire new seller identification aliases, user names, photo albums, private messaging accounts, domain names, and other aliases, as well as related payment accounts, for the purpose of selling and/or offering for sale goods bearing and using counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

15.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiffs and others.

16.     Defendants' business names, i.e., the Seller IDs and Subject Domain Names, associated payment accounts, and any other alias seller identification names and domain names used in connection with the sale of counterfeit and infringing goods using one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' famous brand names and associated trademarks to drive Internet consumer traffic to their e-commerce stores or websites operating under the Seller IDs and Subject Domain Names, thereby increasing the value of the Seller IDs and Subject Domain Names, and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiffs' Business and Trademark Rights

17.     Versace is the owner of all rights in and to the trademarks identified on Schedule "B" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Versace Marks"). The Versace Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Versace Marks are attached hereto as Composite Exhibit "1."

18.     The Versace Marks have been used in interstate commerce to identify and distinguish Versace's high-quality goods for an extended period of time.

19.     The Versace Marks have been used by Versace long prior in time to Defendants' use of copies of those Marks.  The Versace Marks have never been assigned or licensed to any of the Defendants in this matter.

20.     The Versace Marks are symbols of Versace's quality, reputation and goodwill and have never been abandoned.  Versace has carefully monitored and policed the use of the Versace Marks.

21.     The Versace Marks are well known and famous and have been for many years. Versace expends substantial resources developing, advertising and otherwise promoting the Versace Marks. The Versace Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

22.     Further, Versace extensively uses, advertises, and promotes the Versace Marks in the United States in association with the sale of high-quality goods. Versace has spent millions of dollars promoting the Versace Marks and products bearing the Versace Marks. In recent years,

annual sales of products bearing the Versace Marks have totaled in the many millions of dollars within the United States.

23.     As a result of Versace's efforts, members of the consuming public readily identify merchandise bearing or sold under the Versace Marks as being high-quality goods sponsored and approved by Versace.

24.     Accordingly, the Versace Marks have achieved secondary meaning as identifiers of high-quality goods.

25.     Genuine goods bearing the Versace Marks are widely legitimately advertised and promoted by Versace, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Versace's overall marketing and consumer education efforts. Thus, Versace expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") and search engine marketing ("SEM") strategies. Those strategies allow Versace and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Versace brand and the goods sold thereunder.  Similarly, Defendants' individual seller stores and websites are indexed on search engines and compete directly with Versace for space and consumer attention in search results.

26.     Jimmy Choo is the owner of all rights in and to the trademarks identified on Schedule "C" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Jimmy Choo Marks"). The Jimmy Choo Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Jimmy Choo Marks are attached hereto as Composite Exhibit "2."

27.    The Jimmy Choo Marks have been used in interstate commerce to identify and distinguish Jimmy Choo's high-quality goods for an extended period of time.

28.    The Jimmy Choo Marks have been used by Jimmy Choo long prior in time to Defendants' use of copies of those Marks.  The Jimmy Choo Marks have never been assigned or licensed to any of the Defendants in this matter.

29.    The Jimmy Choo Marks are symbols of Jimmy Choo's quality, reputation and goodwill and have never been abandoned.  Jimmy Choo has carefully monitored and policed the use of the Jimmy Choo Marks.

30.    The Jimmy Choo Marks are well known and famous and have been for many years.  Jimmy Choo has expended substantial time, money and other resources developing, advertising and otherwise promoting the Jimmy Choo Marks. The Jimmy Choo Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

31.    Further, Jimmy Choo has extensively used, advertised, and promoted the Jimmy Choo Marks in the United States in association with the sale of high-quality goods. Jimmy Choo has spent millions of dollars promoting the Jimmy Choo Marks and products bearing the Jimmy Choo Marks. In recent years, annual sales of products bearing the Jimmy Choo Marks have totaled in the many millions of dollars within the United States.

32.    As a result of Jimmy Choo's efforts, members of the consuming public readily identify merchandise bearing or sold under the Jimmy Choo Marks as being high-quality goods sponsored and approved by Jimmy Choo.

33.    Accordingly, the Jimmy Choo Marks have achieved secondary meaning as identifiers of high-quality goods.

34.     Genuine goods bearing the Jimmy Choo Marks are widely legitimately advertised and promoted by Jimmy Choo, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Jimmy Choo's overall marketing and consumer education efforts. Thus, Jimmy Choo expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") and search engine marketing ("SEM") strategies. Those strategies allow Jimmy Choo and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Jimmy Choo brand and the goods sold thereunder.  Similarly, Defendants' individual seller stores and websites are indexed on search engines and compete directly with Jimmy Choo for space and consumer attention in search results.

**Defendants' Infringing Activities**

35.     Defendants are each promoting and advertising, distributing, offering for sale, and/or selling goods in interstate commerce using counterfeit and confusingly similar imitations of one or more of the Versace Marks or the Jimmy Choo Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores or commercial Internet websites operating under the Seller IDs and Subject Domain Names. Specifically, Defendants are using the Versace Marks or the Jimmy Choo Marks (collectively, the "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the Seller IDs and Subject Domain Names.  Defendants are each using identical copies of one or more Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

36.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' respective genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores and websites are genuine goods originating from, associated with, and/or approved by Plaintiffs.

37.     Defendants advertise their e-commerce stores and websites, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace platform, social media website and/or image hosting website using, at least, the Seller IDs and/or commercial Internet websites operating under the Subject Domain Names. In so advertising these stores and goods, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

38.     As part of their overall unlawful scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of one or more of Plaintiffs' famous names or Plaintiffs' Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal

marketplace operating in parallel to the legitimate marketplace for Plaintiffs' respective, genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, and (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

39.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

40.     At all times relevant hereto, Defendants have full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of Plaintiffs' respective Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

42.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputations. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

43. Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective genuine goods and Defendants' Counterfeit Goods, which there is not.

44. Given the visibility of Defendants' various e-commerce stores, photo albums, and websites and the similarity of their actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate because of Defendants' concurrent actions.

45. Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

46. Upon information and belief, Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and Subject Domain Names, and any other alias seller identification names, domain names, or websites being used and/or controlled by them.

47. Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

48. Plaintiffs have no adequate remedy at law.

49.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiffs' Marks.  If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

50.     The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

51.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

52.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

53.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiffs' Marks.  Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, offer to sell, and sell counterfeit and infringing versions of Plaintiffs' branded goods.

54.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

55.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

56.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

57.     Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

58.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

59.     Defendants' Counterfeit Goods offered for sale and sold using copies of at least one of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States at least one Internet marketplace website, social media or imaging hosting website, or fully interactive commercial Internet website.

60.     Defendants' Counterfeit Goods offered for sale and sold using copies of at least one of the Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective, genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

61.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

62.     Defendants have each authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

63.     Additionally, Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks in order to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' respective, genuine goods on the World Wide Web and across social media platforms.

64.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

65.     Plaintiffs have no adequate remedy at law, and have sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and each Plaintiff will continue to suffer irreparable injury to their respective goodwill and business reputations, as well as monetary damages.

## COUNT III - COMMON LAW UNFAIR COMPETITION.

66.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

67.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing and/or using marks that are virtually identical to one or more of Plaintiffs' Marks in violation of Florida's common law of unfair competition.

68.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing using or bearing counterfeits and infringements of one or more of the Plaintiffs' Marks. Defendants are also each using counterfeits and infringements of one more of the Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the World Wide Web.

69.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of Plaintiffs' Marks.

70.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions. Moreover, Defendants are unjustly profiting from those actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

71.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 50 above.

72.     Plaintiffs are the respective owners of all common law rights in and to the Plaintiffs' respective Marks.

73.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods using at least one of Plaintiffs' Marks.  Plaintiffs are the owners of all common law rights in and to Plaintiffs' respective Marks.

74.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods using and/or bearing infringements of one or more of Plaintiffs' Marks.

75.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods using Plaintiffs' Marks.

76.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury because of Defendants' actions. Moreover, Defendants are unjustly profiting from those actions.

## **PRAYER FOR RELIEF**

77.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from

infringing, counterfeiting, or diluting the Plaintiffs' Marks; from using the Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' name or trademarks; and from otherwise unfairly competing with Plaintiffs.

       b.    Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Plaintiffs' Marks.

c.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiffs' request, Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Plaintiffs' Marks, to the IP addresses where the associated websites are hosted.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of the Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for unlawful purposes.

e.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their Subject Domain Name(s) and any other domain names used by Defendants to Plaintiffs and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

f.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct all search engines to

permanently delist or deindex the Subject Domain Name(s) and any other domain names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Plaintiffs' Marks.

h.      Entry of an order requiring, upon Plaintiffs' request, Defendants to request in writing permanent termination of any messaging services, Seller IDs, usernames, and social media accounts they own, operate, or control on any messaging service and social media platform.

i.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, the applicable governing messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, disable and/or cease facilitating access to the Seller IDs and any other alias e-commerce stores, seller identification names, photo albums, user names, and private messaging accounts, being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Plaintiffs' Marks.

j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators, registrar and/or top level domain (TLD) Registry for the Seller IDs and Subject Domain Names who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID or Subject Domain Name.

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators who are provided with notice of the injunction issued by the Court, permanently remove from the multiple platforms, which include, *inter alia,* a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Plaintiffs' Marks via the e-commerce stores and Internet based photo albums operating under the Seller IDs, and upon Plaintiffs' request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Plaintiffs' Marks linked to the same sellers or linked to any other alias e-commerce stores, seller identification names, photo albums, user names, and private messaging accounts being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Plaintiffs' Marks.

l.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and this Court's inherent authority that, upon Plaintiffs' request, Defendants and any Internet marketplace, social media, and image hosting

22

website operators and/or administrators who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

   m. Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. § 1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

   n. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

   o. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs and Subject Domain Names or other alias e-commerce stores, social media accounts, photo albums, seller identification names, user names, private messaging accounts, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution

account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

              p.    Entry of an award of pre-judgment interest on the judgment amount.

              q.    Entry of an Order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

              r.    Entry of an order for any further relief as the Court may deem just and proper.

DATED: September 8, 2022.      Respectfully submitted,

                            STEPHEN M. GAFFIGAN, P.A.

                            By: **Stephen M. Gaffigan**
                            Stephen M. Gaffigan (Fla. Bar No. 025844)
                            Virgilio Gigante (Fla. Bar No. 082635)
                            Christine Ann Daley (Fla. Bar No. 98482)
                            T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                            401 East Las Olas Blvd., Suite 130-453
                            Ft. Lauderdale, Florida 33301
                            Telephone: (954) 767-4819
                            E-mail: Stephen@smgpa.net
                            E-mail: Leo@smgpa.net
                            E-mail: Christine@smgpa.net
                            E-mail: Raquel@smgpa.net

                            Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**

SCHEDULE "B"
VERSACE'S FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 1,875,093 | January 24, 1995 | IC 014: goods of precious metals or coated therewith, namely necklaces, earrings, bracelets, broches, rings, necktie pins, badges of precious metal, medallions, belt buckles of precious metal (for clothing), jewelry, precious gemstones, watches, clocks, chronometers<br><br>IC 021: kitchen utensils, namely serving spoons, basting spoons, cork screws, and napkin rings not of precious metal; household containers, namely ice buckets, containers for food and soap; beverage glassware; porcelain dishes in general, earthenware, namely mugs, basins, baskets, beverageware, bowls, buckets, cakeservers, candle holders, chamber pots, commemorative plates, cookware, decorative plates, dishes, doorknobs made of porcelain or earthenware, figurines made of china, crystal, earthenware, glass, porcelain, or terracotta, vases |
| VERSACE | 2,121,984 | December 16, 1997 | IC 018: leather or imitations of leather, namely, animal skins and hides, handbags, wallets, luggage, attache cases, tote bags, briefcases, all-purpose sport bags, travelling trunks and carry-on bags, shoulder bags, garment bags for travelling, keycases, umbrellas.<br><br>IC 025: clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, T-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| VERSACE | 2,440,541 | April 3, 2001 | IC 024: bath linen, bath mats, bed linen; blankets; * unfitted fabric * furniture covers.<br><br>IC 021: household or kitchen utensils and containers; dinnerware; beverage ware glassware sugar bowls; bottle openers; bowls; candle holders not of precious metal; china ornaments; soap dispensers; figurines in china, crystal, porcelain holders for flowers and plants; * flower baskets; plates; pots, soap boxes; soap holders; vases; parts and fittings for the aforesaid goods. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 2,980,455 | August 2, 2005 | IC 014: Articles made of precious metals and alloys of precious metals with or without precious stones, namely rings, necklaces, bracelets, brooches, earrings, tie clips, cuff-links, diamonds, jewelry cases made of precious metal, watches, clocks, chronometers, watch cases, costume jewelry.<br><br>IC 018: Leather and imitation of leather sold in bulk, handbags, wallets, luggage, attache cases, tote bags, briefcases, sport bags, traveling trunks, carry-on bags, shoulder bags, garment bags for traveling, key cases, umbrellas, parasols, walking sticks, whips, harnesses, saddlery; leather key chains.<br><br>IC 020: Furniture; mirrors, namely looking glasses; picture frames; chairs; cupboards; cushions; desks; divans; plastic and wood doorknobs; figures of bone, ivory, plaster, plastic, wax and wood; plastic and wood furniture handles for doors, plastic key chains; magazine racks; office furniture; pillows; fitted furniture covers.<br><br>IC 021: Household or kitchen utensils and containers, namely, dinnerware; beverage-ware; glassware; sugar bowls; beer mugs; bottle openers; bowls; candle holders not of precious metal; china ornaments; cookware, namely non-electric frying pans; corkscrews; soap dispensers; figurines in China, crystal, earthenware, glass, porcelain and terracotta; holders for flowers and plants; perfume atomizers sold empty; plates; pots; soapboxes; soap holders; vases; flower baskets; porcelain and earthenware doorknobs and furniture handles for doors.<br><br>IC 024: Fabric for textile use, fabric of imitation animal skins, fabric for boots and shoes, bath linen; bed linen; blankets; curtains; unfitted furniture covers; handkerchiefs; kitchen towels; textile wall hangings. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | IC 025: Clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, T-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers.<br><br>IC 027: Carpets, rugs, mats and matting, linoleum and other materials for covering existing floors; non-textile wall hangings; non-textile wall decorations. |
| ꙮꙮꙮꙮꙮꙮꙮꙮꙮꙮꙮ | 3,194,501 | January 2, 2007 | IC 014: Articles made of precious metals and alloys of precious metals, with or without precious stones, namely, rings, necklaces, bracelets, earrings, tie clips, cuff-links, watches, costume jewellery.<br><br>IC 018: Leather and imitation leather goods, namely, handbags, wallets, luggage, attaché cases, tote bags, briefcases, sport bags, traveling trunks, carry-on bags, shoulder bags, garment bags for traveling.<br><br>IC 024: Fabric for textile use, fabric for boots and shoes, bath linen, bed linen; bed blankets; unfitted fabric furniture covers<br><br>IC 025: Clothing for men, women and children, namely belts, coats, raincoats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, suits, shirts and chemises, t-shirts, sweaters, underwear, socks and stockings, gloves, ties, scarves, hats and caps, boots, shoes and slippers |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 3,199,127 | January 16, 2007 | IC 014: Articles made of precious metals and alloys of precious metals, with or without precious stones, namely, rings, necklaces, bracelets, brooches, earrings, tie clips, cuff-links, watches, watch cases, costume jewellery, parts and fittings for all the aforesaid goods<br><br>IC 018: Leather and imitation leather goods, namely, handbags, wallets, luggage, tote bags, briefcases, sport bags, carry-on bags, shoulder bags, garment bags for traveling, key cases<br><br>IC 024: Fabric for textile use, fabric of imitation animal skins, fabric for boots and shoes, bath linen, bed linen; bed blankets; and kitchen towels |
|  | 3,453,992 | June 24, 2008 | IC 018: Leather and imitation leather goods, namely, handbags, wallets, luggage, tote bags, key cases<br><br>IC 020: Furniture; mirrors, namely, looking glasses; cushions; desks; divans; office furniture; pillows; parts and fittings for the aforesaid furniture goods, namely, fitted furniture covers not of paper<br><br>IC 024: bath linen; bed linen; bed blankets<br><br>IC 025: Clothing for men, women and children, namely, belts, coats, waistcoats, blouses and pullovers, jackets, trousers, skirts, dresses, shirts and chemises, T-shirts, underwear, socks and stockings, gloves, ties, scarves, hats and caps, shoes and slippers |
| VERSACE | 4,398,385 | September 10, 2013 | IC 014: Articles made of precious metals and alloys of precious metals with or without precious stones, namely, rings, necklaces, bracelets, earrings, cufflinks, watches<br><br>IC 027: bath mats |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 5,937,934 | December 17, 2019 | IC 009: Protective cases for cell phones; Protective cases for laptop computers; Protective cases for portable media players. |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 6,082,409 | June 23, 2020 | IC 014: Jewellery, precious stones; horological and chronometric instruments; rings being jewelry; cuff links; bracelets; watch bands; watch cases being parts of watches; clock cases being parts of clocks; watch chains; jewelry chains; pendants; necklaces; chronographs as watches; timepieces; stopwatches; chronoscopes; diamonds; tie pins; figurines of precious metal; gold thread jewelry; wire of precious metal for use in the making of jewelry, namely, jewelry cable; silver thread jewelry; jewellery; cloisonné jewellery; badges of precious metal; clock hands; alloys of precious metal; ingots of precious metals; movements for clocks and watches; medals; lockets; earrings; jewellery of yellow amber; ornaments of precious metal in the nature of jewelry; ornaments of jet, shoe ornaments of precious metal being shoe jewelry; hat ornaments of precious metal being hat jewelry; pendulum clocks; atomic clocks; wristwatches; pocket watches; master clocks; electric clocks and watches; jewellery stones; key rings; clock dials; boxes of precious metal; cases for clock- and watchmaking being parts for watches and clocks; jewellery cases; cases adapted for holding watches; pins being jewelry; ornamental lapel pins; brooches being jewelry; statuettes of precious metal; paste jewellery; time instruments being chronometric instruments; alarm clocks; watch crystals<br><br>IC 018: Leather and imitations of leather; animal skins, animal hides; women's handbags; pocket wallets; luggage; garment carriers being garment bags for travel; rucksacks; document cases; sports bags; trunks being luggage; travelling trunks; carry-on bags; sling bags; garment bags for travel; valises; suitcases; attaché cases; purses; travelling handbags; notecases, namely, business card cases; key cases, umbrellas; parasols; beach parasols; walking sticks; alpenstocks; whips; harness for horses; saddlery |

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | | | IC 025: Clothing, namely, shirts, pants, jeans, sweaters, skirts, dresses; footwear; headwear; clothing of imitations of leather, namely, pants, jackets; clothing of leather, namely, pants, jackets; motorists' clothing, namely, motorists' jackets, driving gloves; cyclists' clothing, namely, biking shorts, athletic shirts, cycling gloves; clothing for gymnastics, namely, leotards, leggings; gowns; bath robes; bandanas; berets; underclothing; smocks; boas; teddies being undergarments; garters; sports shoes; stockings; slippers; socks; jodhpurs; short-sleeve shirts; shirts; jackets; top hats; coats; hoods; belts for clothing; money belts; tights; collars; detachable collars; suits; beachwear; ties as clothing; ascots; headbands for clothing; pocket squares; dress pocket squares; skirts; jumper dresses; girdles; gloves; arm length gloves; rain coats; ready-to-wear clothing, namely, shirts, pants, dresses; knitwear, namely, knit shirts, knit skirts, knit dresses, knit sweaters, knit jackets; jerseys being clothing; leg warmers; leggings; liveries; sports jerseys; hosiery; swimsuits; pullovers; muffs; maniples; pelerines; mantillas; sleep masks; miniskirts; cowls being clothing; boxer shorts; bathing drawers as clothing; vests; trousers; parkas; pelisses; furs being clothing; shirt yokes; pyjamas; wristbands as clothing; ponchos; sock suspenders; brassieres; sandals; bath sandals; shoes; bath slippers; gymnastic shoes; beach shoes; shawls; sashes for wear; underpants; wimples; topcoats; outerclothing, namely, jackets, coats, vests; petticoats; slips being undergarments; shirt fronts; ankle boots; boots; fur stoles; t-shirts; combinations being clothing; uniforms; veils; visors being headwear; wooden shoes |
| VERSACE | 6,088,586 | June 30, 2020 | IC 009: Protective cases for cell phones; Protective cases for laptop computers; Protective cases for portable media players. |

## SCHEDULE "C"
## JIMMY CHOO'S FEDERALLY REGISTERED TRADEMARKS

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| JIMMY CHOO | 2,641,408 | October 29, 2002 | IC 025: footwear, namely, boots and shoes. |
| JIMMY CHOO | 3,491,347 | August 26, 2008 | IC 025: Footwear, namely, boots, shoes, sandals, slippers, sneakers; headgear, namely, hats, scarves, baseball caps |
| CHOO | 4,934,632 | April 12, 2016 | IC 018S: Backpacks made of leather and imitations of leather, garment bags for travel made of leather or imitations of leather, beach bags made of leather or imitations of leather and briefcases made of leather or imitations of leather; handbags, travelling bags, trunks, purses, wallets, clutch bags, travel wallets, luggage tags, luggage label holders, cosmetic bags sold empty, vanity bags sold empty, pouches, namely, drawstring pouches, leather pouches, imitation leather pouches, textile pouches, attaché cases, cases of leather or leather board, bags, namely, all-purpose sports bags, weekend bags, tote bags, beach bags, evening bags, overnight bags, canvas shopping bags, textile shopping bags, leather shopping bags, garment bags for travel, leather and imitation leather bags, shoe bags for travel, leather or imitations of leather cases for keys, leather key holders, key cases, key bags, credit card cases and debit card cases; business card holders in the nature of card cases and wallets, credit card holders, business card cases; document cases; boxes of leather or leather board; hat boxes made of leather or imitations of leather; parasols, umbrellas, walking sticks; clothing for pets, collars and leads for animals; parts and fittings for the aforesaid goods<br><br>IC 025: Clothing, namely, raincoats, hosiery, belts, shawls, stoles, swimwear, bikinis and kaftans, fur coats, fur collars, fur stoles, footwear; headgear, namely, sun hats, caps, and swimming hats; scarves; gloves, hats |